U. S. Postal Service

# EEO Investigative Affidavit *(Witness)*

| Page No. | No. Pages | Case No. |
|---|---|---|
| 1 | | 4K-220-0002-03 |

| 1. Affiant's Name (First, Middle, Last) | 2. Employing Postal Facility |
|---|---|
| Leonard Napper | Arlington Post Office |

| 3. Position Title | 4. Grade Level | 5. Postal Address and ZIP+4 | 6. Unit Assigned |
|---|---|---|---|
| Postmaster | | 3119 Washington Blvd. Arlington, VA 22210-9998 | |

### Privacy Act Notice

Privacy Act Notice. The collection of this information is authorized by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e-16, the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 633a; the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794; and Executive Order 11478, as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine Use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes; where pertinent, in a legal proceeding to which the USPS is a party or has an interest; to a government agency in order to obtain information relevant to a USPS decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits; to a government agency upon its request when relevant to its decision concerning employment, security clearances, security or suitability investigations, contracts, licenses, grants or other benefits; to a congressional office at your request; to an expert, consultant, or other person under contract with the USPS to fulfill an agency function; to the Federal Records Center for storage; to the Office of Management and Budget for review of private relief legislation; to an independent certified public accountant during an official audit of USPS finances; to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; and to a labor organization as required by the national labor Relations Act. Under the Privacy Act provision, the information requested is voluntary for the complainant, and for Postal Service employees and other witnesses.

### USPS Standards of Conduct

Postal Service regulations require all postal employees to cooperate in any postal investigation.
Failure to supply the requested information could result in disciplinary action. (ELM 666)

7. Statement (Use Form 2569 if additional space is required)

I understand that the following allegations have been accepted for investigation: Mr. Marco J. Thomas alleges discrimination based on mental disability (stress), age (DOB: 10/14/62), and retaliation (prior EEO activity) when: (1) on September 16, 2002, his request for LWOP in lieu of annual or sick leave for the period of September 5, 2002 until further notice was disapproved by Postmaster Napper; (2) on December 9, 2002, he reported for duty as scheduled, however he was yelled at in front of fellow employees by Supervisor Mark Johnson to get off the floor and return at 10:00 AM; (5) on December 2, 2002, after returning from an appointment at the USPS medical unit, he was advised by supervisor Johnson that his reporting time had been changed from 7:00 AM to 9:00 AM that day thus making the job related appointment off-the-clock when it should have been on-the-clock; and (6) on February 10, 2003, he received a Notice of 14-Days Suspension from Mark Johnson.

Q1. What is your full name (first, middle initial and last)?
A1. Leonard L. Napper

Q2. What is your position title, pay grade, work unit and work location address?
A2. Acting Manager, Human Resources
    EAS-25
    Northern Virginia District Office
    8409 Lee Highway

Q3. What is your mental disability, if you have one?
A3. I have no mental disability.

Q4. What is your age and date of birth?
A4. 49
    8/28/54

Q5. Do you have any prior EEO activity (as a witness, complainant, representative, etc.)? If so, when did this prior EEO activity take place?
A5. I have previous EEO activity as a representative of the Agency.

Q6. Were you involved or do you have knowledge of Mr. Thomas's prior EEO activity? If so, how and when were you involved, or when did you become aware of the prior EEO activity?
A6. I do not recall the year. I have relocated to two other facilities since the time of this complaint. I have completed two other affidavits requesting the same information. I have not maintained records of my notes and responses as I had considered the investigative and hearing stages would have been reached by now.

Q7. Were you aware that Mr. Thomas suffered from stress? If so, when did you become aware?
A7. I recall Mr. Thomas complaining of difficulties he encountered while I served in my position as Postmaster of Arlington, VA., 5/17/03. I had heard Mr. Thomas use the term that he was stressed, when describing the way he was feeling on one occasion where he was being interviewed by his supervisor because of his less-than-acceptable work performance.

Q8. What was your work relationship with Mr. Thomas during the time period of the matters at issue (September, December 2002 and February 2003), and what is your current relationship? (Immediate supervisor, second-level supervisor, etc.)
A8. At the time of my involvement with Mr. Thomas, I was the Installation Head of the Arlington Virginia Post Office I was responsible for this large multi-station installation with over 500 employees. Mr. Thomas reported to a supervisor. The supervisor reported to a manager. This manager reported to a senior manager, The senior manager would report to me.

On rare occasions, if an employee believes that his concerns should bypass normal reporting channels, I weigh the conditions and allow for a more direct meeting. This way, potential problems can be suitably addressed.

Affidavit  B
Page  1  of  10

<u>Issue #1: On September 16, 2002, his request for LWOP in lieu of annual or sick leave for the period of September 5, 2002 until further notice was disapproved by Postmaster Napper</u>

Q9. On September 16, 2002, did Mr. Thomas request leave without pay (LWOP) or sick leave for the period September 5, 2002 until further notice? If so, what reason(s) did Mr. Thomas give for the request?
A9. I do not recall. Normally all such requests are made through the employee's immediate supervisor.

Q10. What were your reasons for denying Mr. Thomas's request for LWOP?
A10. I do not recall approving or denying the employee's request.

Q11. Was any other management official involved with the decision to deny Mr. Thomas's request? If so, identify the management official(s) and their reason(s) for the denial.
A11. His immediate supervisor at the time was Anthony Huntley. His manager at the time was Ivy Cash.

Q12. What is policy/agreement regarding the granting of LWOP in lieu of annual or sick leave, and did you follow this policy?
A12. The policy is that when an employee's earned annual and sick leave balances are zero, LWOP is automatically charged in time increments on the employee's pay record whenever he is absent. Whenever subsequent annual leave and/or sick leave is earned and accrued, the employee can request the usage of the earned leave and LWOP will not be charged.

Q13. Mr. Thomas identified Destra Beyne and Demetrice Mundy as employees who were treated differently than he was. Was Destra Beyne and Demetrice Mundy allowed to take LWOP in lieu of sick or annual leave? If so, who gave the approval, and when did they take LWOP?
A13. If these employees had other leave balances, they may have been allowed to take LWOP. I recall both of these employees had documentation from physicians prescribing that they be off duty. I do not believe either of them had sick leave balances at the time.

Q14. If Destra Beyne and Demetrice Mundy were allowed to take LWOP in lieu of sick or annual leave, what were the reasons and how did their circumstances differ from Mr. Thomas's? (Please identify Destra Beyne and Demetrice Mundy by mental disability, if they have one, age and prior EEO activity)
A14 I do not have access to disability records and would not have known their mental state or full EEO activity history.

Q15. Were other similarly situated employees to Mr. Thomas, under the same or similar circumstances, allowed to take LWOP in lieu of sick or annual leave? If so, why were their requests approved and not Mr. Thomas's, and what management official(s) approved LWOP for these employees? (Please identify these employees by name, position title, grade, mental disability, age and prior EEO activity)
A15. I am not aware of any other employees who requested LWOP under the same circumstances as Mr. Thomas.

Q16. Was Mr. Thomas's <u>mental disability</u> a factor when his request to use LWOP in lieu of annual or sick leave was denied? If so, explain the reason(s)
A16. No.

Q17. Was Mr. Thomas's <u>age</u> a factor when his request to use LWOP in lieu of annual or sick leave was denied? If so, explain the reason(s)
A17. No.

Q18. Was Mr. Thomas's <u>prior EEO activity</u> a factor when his request to use LWOP in lieu of annual or sick leave was denied? If so, explain the reason(s)
A18. No.

Q19. Did Mr. Thomas file a grievance on this issue? If so, what was the outcome of the grievance?
A19. I do not recall.

<u>Issue #2: On December 9, 2002, he reported for duty as scheduled, however he was yelled at in front of fellow employees by Supervisor Mark Johnson to get off the floor and return at 10:00 AM</u>

Q20. On December 9, 2002, did you observe or do you have any knowledge of Mr. Johnson yelling at Mr. Thomas in front of other employees to get off the floor and return at 10:00 AM? If so, how and when did you learn about it? (Explain the circumstances)
A20. I am not aware of this incident.

Q21. What was/were the reason(s) Mr. Johnson yelled at Mr. Thomas, and why did he want him to get off the floor and return at 10:00 AM?
A21. I do not know about this incident.

Q22. Prior to this incident, had Mr. Johnson yelled at any other employee in front of other employees to get off the floor and return at a later time? If so, when did this take place and what was the reason? (Identify the employee(s) by name, position title, grade, mental disability, age and whether they had prior EEO activity)
A22. I am not aware of any incident of this kind.

Q23. Is Mr. Johnson's management style to yell at an employee in front of other employees to get off the floor and return at a later time?
A23. Mr. Johnson at the time was an acting supervisor. I have never been made aware that Mr. Thomas ever had a problem with this supervisor. I recall Mr. Thomas reported having a difficulty with supervisor Anthony Huntley. His having difficulty with Johnson is new information to me. But then, Mr. Thomas reportedly experienced difficulty with other supervisors regarding his work performance and his attendance.

Q24. What is policy regarding a supervisor yelling at an employee in front of other employees, or telling an employee to get off the floor and return at a later time?
A24. This is unacceptable behavior. The Postal Service has a zero tolerance policy against workplace violence or hostility.

Q25. Was Mr. Thomas's <u>mental disability</u> a factor when Mr. Johnson yelled at him in front of other employees to get off the floor and return at 10:00 AM on December 9, 2002? If so, explain the reason(s)
A25. N/A

Q26. Was Mr. Thomas's <u>age</u> a factor when Mr. Johnson yelled at him in front of other employees to get off the floor and return at 10:00 AM on December 9, 2002? If so, explain the reason(s)
A26. N/A

Q27. Was Mr. Thomas's <u>prior EEO activity</u> a factor when Mr. Johnson yelled at him in front of other employees to get off the floor and return at 10:00 AM on December 9, 2002? If so, explain the reason(s)
A27. N/A

Affidavit _B_
Page _2_ of _10_

Q28. Did Mr. Thomas file a grievance on this issue? If so, what was the outcome of the grievance?
A28. I do not know if Mr. Thomas filed a grievance on this issue.

Issue #5: On December 2, 2002, after returning from an appointment at the USPS medical unit, he was advised by supervisor Johnson that his reporting time had been changed from 7:00 AM to 9:00 AM that day thus making the job related appointment off-the-clock when it should have been on-the-clock

Q29. What knowledge or involvement did you have with Mr. Johnson changing Mr. Thomas's reporting time from 7:00 AM to 9:00 AM?
A29. I am not aware of Mr. Johnson changing Mr. Thomas' time.

Q30. What was/were the reason(s) Mr. Johnson changed Mr. Thomas's reporting time from 7:00 AM to 9:00 AM?
A30. I am not aware of this.

Q31. What other management officials were involved with changing Mr. Thomas's reporting time from 7:00 AM to 9:00 AM, and what were their reasons for doing this?
A31. I am not aware of this assertion.

Q32. What is policy/agreement regarding changing an employee's reporting time when he/she has a medical employment, and was this followed with regard to Mr. Thomas?
A32. If an employee hs an off-the-job injury and cannot perform the core functions of his duties and he requires accommodations, a time change may be offered to the employee. The employee has the right not to accept the change.

Q33. Has the reporting time of other similarly situated employees to Mr. Thomas, under the same or similar circumstances, changed? If so, what was the reason, and what management official(s) made the decision? (Please identify these employees by name, position title, grade, mental disability, age and prior EEO activity)
A33. Others would have been treated the same under the circumstances stated in Question 32 above.

Q34. Was Mr. Thomas's mental disability a factor when his reporting time was changed? If so, explain the reason(s)
A34. N/A

Q35. Was Mr. Thomas's age a factor when his reporting time was changed? If so, explain the reason(s)
A35. N/A

Q36. Was Mr. Thomas's prior EEO activity a factor when his reporting time was changed? If so, explain the reason(s)
A36. N/A

Q37. Did Mr. Thomas file a grievance on this issue? If so, what was the outcome of the grievance?
A37. I do not know if Mr. Thomas filed a grievance.

Issue #6: On February 10, 2003, he received a Notice of 14-Days Suspension from Mark Johnson.

Q38. What is your knowledge and/or involvement with the Notice of 14-Day Suspension Mr. Johnson gave to Mr. Thomas?
A38. I am not aware of disciplinary action being taken against Mr. Thomas by Mark Johnson.

Q39. What was/were the reason(s) Mr. Johnson gave Mr. Thomas the Notice of 14-Day Suspension, and did you agree with it?
A39. I am not aware of any disciplinary action being taken against Mr. Thomas by Mark Johnson.

Q40. What other management official(s) was/were involved with the decision to give Mr. Thomas the Notice of 14-Day Suspension, and how were they involved?
A40. I am not aware of the activity that has been described.

Q41. Was Mr. Thomas given any warnings prior to the issuance of the Notice of 14-Day Suspension? If so, what were the warnings, when were they given and what management official(s) gave him the warnings?
A41. I am not aware of the activity that has been described.

Q42. What is policy/agreement regarding issuing a Notice of 14-Day Suspension to an employee, and was this policy followed with regard to Mr. Thomas?
A42. I am not aware of the activity that has been described.

Q43. Were other similarly situated employees to Mr. Thomas, under the same or similar circumstances, given a Notice of 14-Day Suspension? If so, what were the reasons and what management official(s) were involved? (Please identify these employees by name, position title, grade, mental disability, age and prior EEO activity)
A43. I am not aware of the activity that has been described.

Q44. Was Mr. Thomas's mental disability a factor when he was given a Notice of 14-Day Suspension? If so, explain the reason(s)
A44. I am not aware of the activity that has been described.

Q45. Was Mr. Thomas's age a factor when he was given a Notice of 14-Day Suspension? If so, explain the reason(s)
A45. I am not aware of the activity that has been described.

Q46. Was Mr. Thomas's prior EEO activity a factor when he was given a Notice of 14-Day Suspension? If so, explain the reason(s)
A46. I am not aware of the activity that has been described.

Q47. Did Mr. Thomas file a grievance on this issue? If so, what was the outcome of the grievance?
A47. I am not aware of the activity that has been described.

Q48. Is there anyone you would care to name who has knowledge of the matters at issue? (If so, please provide the person's name, position title, job location, telephone number and the specific knowledge the person has)
A48. Anthony Huntley, Supervisor of Customer Service, Arlington Main Post Office 703 525 8007.

Affidavit B
Page 3 of 10

Q49. Is there anything related to the accepted issues you want to add to your statement?
A49. No.

---------- END OF QUESTIONS ----------

Provide a copy of any documentation you believe supports your statements.

I declare under penalty of perjury that the foregoing is true and correct.

Affiant's Signature: *Leonard L. Nash* (signed)

Date Signed: 4/23/04

PS Form 2568-B, March 2001

| U.S. Postal Service | Case No. |
|---|---|
| **Certification** | 4K-220-0002-03 |

I have read the proceeding attached statement, consisting of ___ pages, and it is true and complete to the best of my knowledge and belief. In making this statement, I understand Section 1001, Title 18 of the U.S. Code which states:

"Whoever, in any manner within the jurisdiction of any department or agency of the United States knowingly and wilfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representation, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than 5 years, or both."

### Privacy Act Notice

**Privacy Act Notice.** The collection of this information is authorized by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e-16; the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 633a; the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794a; and Executive Order 11478, as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes; where pertinent, in a legal proceeding to which the USPS is a party or has an interest; to a government agency in order to obtain information relevant to a USPS decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits; to a government agency upon its request when relevant to its decision concerning employment, security clearances, security or suitability investigations, contracts, licenses, grants or other benefits; to a congressional office at your request; to an expert, consultant or other person under contract with the USPS to fulfill an agency function; to the Federal Records Center for storage; to the Office of Management and Budget for review of private relief legislation; to an independent certified public accountant during an official audit of USPS finances; to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; and to a labor organization as required by the National Labor Relations Act. Under the Privacy Act provision, the information requested is voluntary for the complainant and for Postal Service employees and other witnesses.

### USPS Standards of Conduct

Postal Service regulations require all postal employees to cooperate in any postal investigation. Failure to supply the requested information could result in disciplinary action (ELM 666).

### Oath / Affirmation

Subscribed and (sworn) (affirmed) before me on this __XXXX__ day of __XXXXXXXXXX__, 20XX.

| Signature of EEO Complaints Investigator | Affiant's Signature (Sign in the presence of EEO Investigator) |
|---|---|
| | Signature of Affiant |

### Declaration

**I declare, under penalty of perjury, that the foregoing is true and correct.**

*(Affiant, sign and date if attached statement was not completed in the presence of the EEO investigator.)*

| Affiant's Signature | Date Signed |
|---|---|
| X _Elmer L. Napp_ | X 4/19/04 |

PS Form 2571, May 2001

Affidavit __B__
Page __5__ of __10__

EEO COMPLAINTS INVESTIGATOR
CAPITAL METRO OPERATIONS


UNITED STATES
POSTAL SERVICE

November 7, 2003

**RE: EEO Investigation / Affidavit**
**Complainant: Marco J. Thomas      Case No.: 4K-220-0002-03**
*Specific Issue(s):   Discrimination due to mental disability (Stress), age (dob: 10/14/62) and retaliation (Prior EEO*

Leonard Napper
Postmaster

In accordance with applicable Equal Employment Opportunity Commission regulations, all allegations of discrimination require a fact-finding investigation.  I have been assigned to conduct the EEO investigation relating to the Complainant's case identified above.  Affidavits and/or documentary evidence are necessary while conducting this investigation.

Enclosed is an affidavit questionnaire for your completion. To complete the affidavit please follow these instructions and be as specific as possible:

-----*On PS Form 2568-B, EEO Investigative Affidavit (Witness) provide all the information at the top, answer the questions, date and sign the bottom of page one.*

-----If needed, use PS Form 2569, EEO Investigative Affidavit *(Continuation Sheet)* to answer remaining questions, number each page, sign and date the bottom of each page.

-----Sign and date PS Form 2571, Certification, after you have answered all the questions on the affidavit.

Note: You have the right to have a representative present at anytime you are asked for testimony at the investigative and/or hearing stage.  Therefore, if you so desire, have your representative review your completed affidavit prior to submitting it to this office.

**Return the completed affidavit to me by COB, November 17, 2003. Also, you are directed not to discuss any aspect of the case with the complainant. Any and all inquires pertaining to the case should be directed to me.**

Sincerely,

/DL/

Donald Lanier
EEO Complaints Investigator
Capital Metro Operations
405 Chesterfield Road
Hampton, VA 23661-9998
(757) 244-3427

Affidavit _B_
Page _6_ of _10_

| U.S. Postal Service | | Page No. | No. Pages | Case No. |
|---|---|---|---|---|
| **EEO Investigative Affidavit** *(Witness)* | | 1 | | 4K-220-0002-03 |

| 1. Affiant's Name *(First, Middle, Last)* | | 2. Employing Postal Facility | | |
|---|---|---|---|---|
| Leonard Napper | | Woodbridge, Virginia | | |

| 3. Position Title | 4. Grade Level | 5. Postal Address and ZIP + 4 | 6. Unit Assigned |
|---|---|---|---|
| Postmaster | EAS-24 | 1810 Reddy Dr. Woodbridge, VA 22191-9998 | Main Office |

### Privacy Act Notice

**Privacy Act Notice.** The collection of this information is authorized by The Equal Employment Opportunity Act of 1972, 42 U.S.C. 2000e-16; The Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C 633a; The Rehabilitation Act of 1973, as amended, 29 U.S.C. 794a; and Executive Order 11478, as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes; where pertinent, in a legal proceeding to which the USPS is a party or has an interest; to a government agency in order to obtain information relevant to a USPS decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits; to a government agency upon its request when relevant to its decision concerning employment, security clearances, security or suitability investigations, contracts, licenses, grants or other benefits; to a congressional office at your request; to an expert, consultant, or other person under contract with the USPS to fulfill an agency function; to the Federal Records Center for storage; to the Office of Management and Budget for review of private relief legislation; to an independent certified public accountant during an official audit of USPS finances; to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; and to a labor organization as required by the National Labor Relations Act. Under the Privacy Act provision, the information requested is voluntary for the complainant, and for Postal Service employees and other witnesses.

### USPS Standards of Conduct

Postal Service regulations require all postal employees to cooperate in any postal investigation. Failure to supply the requested information could result in disciplinary action. (ELM 666)

7. Statement *(Use Form 2569 if additional space is required)*

**YOU HAVE THE RIGHT TO REPRESENTATION DURING THE COMPLETION OF THIS AFFIDAVIT.**

Q1. Please state your full name, position, age and mental disability, if any.
A1. **Leonard L. Napper, Jr., Postmaster, Woodbridge, VA, 49, no disability.**

Q2. On 9/16/02, were you Marco Thomas's manager or Postmaster?
A2. **I was the Postmaster of Arlington, VA.**

Q3. On 9/16/02, did you deny the Complainant's request for LWOP in lieu of sick or annual leave for September 5, 2002 until further notice?
A3. **I do not recall details that took place on this date. If a record exists with my signature of approval or otherwise, I do not have a record. I am no longer an administrator in that office. Typically, the employee can make the request. It is likely the request would have been approved if the employee had no sick leave balance. If the employee did in fact make the request and is able to show a record to reference, I could offer a more definite answer to this question.**

Q4. Please explain, in detail, why you denied the Complainant's request for LWOP?
A4. **Please refer to A3.**

Q5. What documentation or evidence exists to support your decision to deny the Complainant's leave request?
A5. **Please refer to A3.**

Affidavit B
Page 2 of 10

Q6. What regulations or contract provisions did you rely upon in denying the Complainant's request for leave?

A6.  Please refer to A3.


Q7.  Are there any local policies in place that applied in the Complainant's leave request? If so, what policy?
A7.  Please refer to A3.


Q8.  Did you explain to the Complainant why his leave request was being denied? If yes, what explanation did you provide to the Complainant?
A8.  Please refer to A3.


Q9.  Have you denied any other employee's request for leave for the same or similar reasons for which you denied the Complainant's leave request? If yes, state who, their age, if they have a mental impairment and if they have prior EEO Activity when you denied their leave.
A9.  Please refer to A3.


Q10. Did you deny the leave because of the complainant's disability?
A10. **If the Complainant's leave request was denied, I would not have denied it based on his disability or any other discriminatory purpose.**


Q11. Did you deny the leave because of the complainant's age?
A11. **If the Complainant's leave request was denied, I would not have denied it based on his age or any other discriminatory purpose.**


Q12. Did you deny the leave because of the complainant's prior EEO Activity?
A12. **If the Complainant's leave request was denied, I would not have denied it based on his prior EEO Activity or any other discriminatory purpose.**


Q13. Is there any further information you can provide that will assist in the procession of this complaint?
A13. No.

Q14.
A14.


**I declare under penalty of perjury that the foregoing is true and correct.**

Affidavit  B
Page 8 of 10

| Affiant's Signature | Date Signed |
|---|---|
| *[signed]* Lemarc L. Napp | 12/1/03 |

PS Form **2568-B**, March 2001

| U.S. Postal Service **Certification** | Case No. 4K-220-0002-03 |
|---|---|

I have read the foregoing attached statement, consisting of _____ pages, and it is true and complete to the best of my knowledge and belief. In making this statement, I understand Section 1001, Title 18 of the U.S. Code which states:

"Whoever, in any manner within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representation, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than 5 years, or both."

### Privacy Act Notice

**Privacy Act Notice.** The collection of this information is authorized by The Equal Employment Opportunity Act of 1972, 42 U.S.C. 2000e-16; The Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C.633a; The Rehabilitation Act of 1973, as amended, 29 U.S.C. 794a; and Executive Order 11478, as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes; where pertinent, in a legal proceeding to which the USPS is a party or has an interest; to a government agency in order to obtain information relevant to a USPS decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits; to a government agency upon its request when relevant to its decision concerning employment, security clearances, security or suitability investigations, contracts, licenses, grants or other benefits; to a congressional office at your request; to an expert, consultant, or other person under contract with the USPS to fulfill an agency function; to the Federal Records Center for storage; to the Office of Management and Budget for review of private relief legislation; to an independent certified public accountant during an official audit of USPS finances; to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; and to a labor organization as required by the National Labor Relations Act. Under the Privacy Act provision, the information requested is voluntary for the complainant, and for Postal Service employees and other witnesses.

### USPS Standards of Conduct

Postal Service regulations require all postal employees to cooperate in any postal investigation. Failure to supply the requested information could result in disciplinary action (ELM 666).

### Oath / Affirmation

Subscribed and (sworn) (affirmed) before me on this _____ day of _____ 2003.

_(Affiant, sign in the presence of an EEO Complaints Investigator.)_

| Signature of EEO Complaints Investigator | Signature of Affiant |
|---|---|

### Declaration

I declare, under penalty of perjury, that the foregoing is true and correct.

_(Affiant, sign and date if attached statement was not completed in the presence of an EEO Complaints Investigator.)_

| Signature of Affiant: *[signed] Leonard L. Napper* | Date Signed: 12/1/03 |
|---|---|

PS Form **2571**, March 2001

Affidavit  B
Page 10 of 10