U. S. Postal Service

# EEO Investigative Affidavit *(Witness)*

| Page No. 1 | No. Pages | Case No. 4K-220-0002-03 |
|---|---|---|

| 1. Affiant's Name (First, Middle, Last) **Mark Johnson** | | 2. Employing Postal Facility **Arlington Post Office** | |
|---|---|---|---|
| 3. Position Title **Supervisor** | 4. Grade Level | 5. Postal Address and ZIP+4 **3119 Washington Blvd. Arlington, VA 22210-9998** | 6. Unit Assigned |

## Privacy Act Notice

Privacy Act Notice. The collection of this information is authorized by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e-16; the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 633a; the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794a; and Executive Order 11478, as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine Use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes; where pertinent, in a legal proceeding to which the USPS is a party or has an interest; to a government agency in order to obtain information relevant to a USPS decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits; to a government agency upon its request when relevant to its decision concerning employment, security clearances, security or suitability

investigations, contracts, licenses, grants or other benefits; to a congressional office at your request; to an expert, consultant, or other person under contract with the USPS to fulfill an agency function; to the Federal Records Center for storage; to the Office of Management and Budget for review of private relief legislation; to an independent certified public accountant during an official audit of USPS finances; to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; and to a labor organization as required by the national labor Relations Act. Under the Privacy Act provision, the information requested is voluntary for the complainant, and for Postal Service employees and other witnesses.

## USPS Standards of Conduct

Postal Service regulations require all postal employees to cooperate in any postal investigation. Failure to supply the requested information could result in disciplinary action. (ELM 666)

7. Statement (Use Form 2569 if additional space is required)

I understand that the following allegations have been accepted for investigation: Mr. Marco J. Thomas alleges discrimination based on mental disability (stress), age (DOB: 10/14/62), and retaliation (prior EEO activity) when: (1) on September 16, 2002, his request for LWOP in lieu of annual or sick leave for the period of September 5, 2002 until further notice was disapproved by Postmaster Napper; (2) on December 9, 2002, he reported for duty as scheduled, however he was yelled at in front of fellow employees by Supervisor Mark Johnson to get off the floor and return at 10:00 AM; (5) on December 2, 2002, after returning from an appointment at the USPS medical unit, he was advised by supervisor Johnson that his reporting time had been changed from 7:00 AM to 9:00 AM that day thus making the job related appointment off-the-clock when it should have been on-the-clock; and (6) on February 10, 2003, he received a Notice of 14-Days Suspension from Mark Johnson.

Q1.  What is your full name (first, middle initial and last)?

A1.  MARK R. JOHNSON

Q2.  What is your position title, pay grade, work unit and work location address?

A2.  Supervisor Customer Service, EAS-17, EAOs Station
1720 EAOs St
Arlington Va. 22202

Affidavit  C
Page  1  of  14

Q9.    What is your knowledge of or involvement with the denial of Mr. Thomas's request for
       LWOP in lieu of annual or sick leave on September 16, 2002, for the period September 5,
       2002 until further notice, and what reason(s) did Mr. Thomas give for the request?

A9.    No Involvement

Q10.   What was/were the reason(s) for denying Mr. Thomas's request for LWOP, and who denied
       the request?

A10.   I did not deny Mr Thomas request.
       and do not know who did.

Q11.   What other management officials were involved with the decision to deny Mr. Thomas's
       request for LWOP?  If so, identify the management official(s) and their reason(s) for the
       denial.

A11.   Unknown

Q12.   What is policy/agreement regarding the granting of LWOP in lieu of annual or sick leave,
       and was this followed with regard to Mr. Thomas?

A12.   Employee must request LWOP.

Affidavit  C
Page  3  of  14

Q13.   Mr. Thomas identified Destra Beyne and Demetrice Mundy as employees who were treated
       differently than he was.  Was Destra Beyne and Demetrice Mundy allowed to take LWOP

       Ms. Mundy was on an Active pay status. unknown
       About Ms. Beyne Status.

Q18.   Was Mr. Thomas's <u>prior EEO activity</u> a factor when his request to use LWOP in lieu of annual or sick leave was denied?  If so, explain the reason(s)

A18.

No Knowelge of Any Prior EEO activity

Q19.   Did Mr. Thomas file a grievance on this issue? If so, what was the outcome of the grievance?

A19.   ~~●●●~~. UNKNOWN

<u>Issue #2:  On December 9, 2002, he reported for duty as scheduled, however he was yelled at in front of fellow employees by Supervisor Mark Johnson to get off the floor and return at 10:00 AM</u>

Q20.   On December 9, 2002, did you yell at Mr. Thomas in front of other employees to get off the floor and return at 10:00 AM?  If so, why did you yell at him, and tell him to get off the floor and return at 10:00 AM?  (Explain the circumstances)

A20.

No.

Q21.   Were other employees present when you yelled at Mr. Thomas to get off the floor and return at 10:00 AM?  If so, who were these other employees?

A21.

I did Not yell At Mr. Thomas

Affidavit C
Page 5 of 14

Q22. Prior to this incident, had you yelled at an employee in front of other employees to get off the floor and return at a later time? If so, when and why did this take place? (Identify the employee(s) by name, position title, grade, mental disability, age and whether they had prior EEO activity)

Q22.

No

Q23. Is it your management style to yell at an employee in front of other employees, and to tell an employee to get off the floor and return at a later time?

A23.

No. I only give instructions to my Employees in a calm and low level voice.

Q24. What is policy/agreement regarding a supervisor yelling at an employee in front of other employees, or telling an employee to get off the floor and return at a later time?

A24.

To Give instructions in a clear and concise manner

Q25. Was Mr. Thomas's <u>mental disability</u> a factor when you yelled at him in front of other employees to get off the floor and return at 10:00 AM on December 9, 2002? If so, explain the reason(s)

A25.

No I did not yell at Mr. Thomas

Affidavit C
Page 6 of 14

Q26. Was Mr. Thomas's <u>age</u> a factor when you yelled at him in front of other employees to get off the floor and return at 10:00 AM on December 9, 2002? If so, explain the reason(s)

NO. I did not yell at Mr Thomas

A26.

Q27.    Was Mr. Thomas's <u>prior EEO activity</u> a factor when you yelled at him in front of other
        employees to get off the floor and return at 10:00 AM on December 9, 2002?  If so, explain
        the reason(s)

A27.

No Knowelgc of Prior EEO Activity.

Q28.    Did Mr. Thomas file a grievance on this issue? If so, what was the outcome of the
        grievance?

A28.

UNKNowN

**Issue #5:  On December 2, 2002, after returning from an appointment at the USPS medical unit,
he was advised by supervisor Johnson that his reporting time had been changed from
7:00 AM to 9:00 AM that day thus making the job related appointment off-the-clock when it
should have been on-the-clock**

Q29.    On December 2, 2002, did you change Mr. Thomas's reporting time from 7:00 AM to 9:00
        AM?  If so, what was/were the reason(s)?

A29.

No. Mr. Thomas did not return to work until 9:00AM

Prior to return to work Medical Clearance was

to be obtained by Mr. Thomas

Q30.    What other management officials were involved with changing Mr. Thomas's reporting
        time from 7:00 AM to 9:00 AM, and what were their reasons for doing this?

A30.

Mr. Thomas time was not changed

Q31.  What is policy/agreement regarding changing an employee's reporting time when he/she has a medical appointment, and was this followed with regard to Mr. Thomas?

A31.  Medical Clearance must be given prior to any Employee returning to work if they have been out for M

Q32.  Have you (or other management officials who were involved with changing Mr. Thomas's reporting time) changed the reporting time of other similarly situated employees to Mr. Thomas, under the same or similar circumstances?  If so, what was the reason, and what management official(s) made the decision?  (Please identify these employees by name, position title, grade, mental disability, age and prior EEO activity)

A32.  No

Q33.  Was Mr. Thomas's <u>mental disability</u> a factor when his reporting time was changed?  If so, explain the reason(s)

A33.  No

Q34.  Was Mr. Thomas's <u>age</u> a factor when his reporting time was changed? If so, explain the reason(s)

A34.  No

Q35.  Was Mr. Thomas's <u>prior EEO activity</u> a factor when his reporting time was changed?  If so, explain the reason(s)

A35.  No

Affidavit  C
Page 8 of 14

Q36. Did Mr. Thomas file a grievance on this issue? If so, what was the outcome of the grievance?

A36.

YES, UNKNOWN

**Issue #6: On February 10, 2003, he received a Notice of 14-Days Suspension from Mark Johnson.**

Q37. On February 10, 2003, what were the reasons you gave Mr. Thomas a Notice of 14-Day Suspension?

A37. Mr. Thomas was issue a 14-Day Supension. See 14 Day Suspion

Q38. Were other management official(s) involved with the decision to give Mr. Thomas the Notice of 14-Day Suspension? If so, what management officials were involved and how were they involved?

A38. Mr. Tim Scott Concured.

Q39. Was Mr. Thomas given any warnings prior to the issuance of the Notice of 14-Day Suspension? If so, what were the warnings, when were they given and what management official(s) gave him the warnings?

A39. See 14-Day Suspension

Affidavit___C___
Page__9__of__14__

Q40.   What is policy/agreement regarding issuing a Notice of 14-Day Suspension to an employee, and was this policy/agreement followed with regard to Mr. Thomas?

A40.   City Delivery Carrier Handbook, Section 131.33, 131.44, 442
ELM sections 666.1, 666.51, 5

Q41.   Have you (or other management officials who were involved giving Mr. Thomas a Notice of 14-Day Suspension) given other similarly situated employees to Mr. Thomas, under the same or similar circumstances, a Notice of 14-Day Suspension? If so, what were the reasons and what management official(s) were involved? (Please identify these employees by name, position title, grade, mental disability, age and prior EEO activity)

A41.   No

Q42.   Was Mr. Thomas's <u>mental disability</u> a factor when he was given a Notice of 14-Day Suspension? If so, explain the reason(s)

A42.   No

Q43.   Was Mr. Thomas's <u>age</u> a factor when he was given a Notice of 14-Day Suspension? If so, explain the reason(s)

A43.   No

Affidavit  C
Page 10 of 14

Q44.   Was Mr. Thomas's <u>prior EEO activity</u> a factor when he was given a Notice of 14-Day Suspension? If so, explain the reason(s)

A44.   No

Q45.  Did Mr. Thomas file a grievance on this issue? If so, what was the outcome of the grievance?

A45.  Unknown

Q46.  Is there anyone you would care to name who has knowledge of the matters at issue? (If so, please provide the person's name, position title, job location, telephone number and the specific knowledge the person has)

A46.  No

Q47.  Is there anything related to the accepted issues you want to add to your statement?

A47.  No

------------------------------- END OF QUESTIONS -------------------------------

**Provide a copy of any documentation you believe supports your statements.**

---

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | Date Signed |
|---|---|
| X _____ | X 4/23/04 |

PS Form **2568-B**, March 2001

Affidavit ___C___
Page __11__ of __14__

ADDENDUM TO MARK JOHNSON'S AFFIDAVIT

Issue 2:

Mr. Thomas reported to work on December 2, 2002, after having been off on sick leave or leave without pay for an extended period of time. Mr. Thomas did not complete his duty assignment on December 2 and he was out on sick leave on December 3, but he would not give a reason for going on sick leave. Since he was on sick leave for an extended period of time and went on sick leave the day after he returned to work, I needed to know his medical status and whether he could perform his duties. On December 4, when he again returned to work, I told his to start reporting to work at 10:00am beginning December 7, and that I needed to have a medical report from his physician stating his medical status. Mr. Thomas did not request accommodation, but the plan was to have him report to work at 10:00am so he could perform part of his duties until he submitted medical records.

I was off on December 6 and 7, and Mr. Thomas did not comply with the change of schedule and did not submit medical records. On December 9, Mr. Thomas reported to work prior to 10:00am and without medical records, so I had him clock out and told him to report at 10:00am and to have medical records showing his medical status. He called later that day and said he could not come back to work, but gave no reason. On January 23, 2003, I received a letter from his physician stating he was still suffering from anxiety and tension and should be excused from work from December 9, 2002, until further notice.

I have not asked any other employee to clock out and return at a later time, but I have not been involved with any other similar situation.


Issue 5:

Prior to December 2, 2002, Mr. Thomas had been on sick leave or leave without pay for approximately six months. Mr. Thomas had an appointment at the USPS Medical Facility prior to reporting to work at 9:00am on December 2. Since he reported for work at 9:00am and submitted medical documentation at that time that he was able to work, I told him that would be his start time. Mr. Thomas wanted his start time to be 7:00am when he went to the Medical Facility, but he was still considered to be on sick leave until I received clearance that he could return to work, and he did not report for duty until 9:00am. He did not have an on-the-job injury, so he had to prove he was medically able to return to work. I expected Mr. Thomas to work an eight-hour tour of duty from the time he clocked in at 9:00am.

Exhibit 6:

I issued Mr. Thomas a Notice of Fourteen Day Paper Suspension for not following instructions on December 2, 2002, when he failed to deliver mail. Prior to going on extended leave, Mr. Thomas was assigned to work Route 111, and when Mr.

Thomas reported for work at 9:00am on December 2, I gave him part of this route to work, which he was familiar with. Since a vehicle was not available, Mr. Thomas was driven to his assignment with the instructions to call the office after he completed delivering two and one half hours of mail at a particular location. After he called at 2:00pm, a vehicle and one and a half hours of mail was taken to him for delivery, but he returned to the office at 3:20pm with the mail not delivered. Mr. Thomas did not give an explanation for not delivering the mail, and he should have been able to complete the route in the time he worked. He was not given any additional or extra work.

During 2002, I have issued disciplinary action in the form of Letters of Warning to three employees, who are Letter Carriers, and they are Frank Norris, Harry Saunders and Rick Sweeney

U.S. Postal Service

**Certification**

Cᴸ . No.

4K-220-0002-03

I have read the proceeding attached statement, consisting of 12 pages, and it is true and complete to the best of my knowledge and belief. In making this statement, I understand Section 1001, Title 18 of the U.S. Code which states:

"Whoever, in any manner within the jurisdiction of any department or agency of the United States knowingly and wilfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representation, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than 5 years, or both."

## Privacy Act Notice

**Privacy Act Notice.** The collection of this information is authorized by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e-16; the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 633a; the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794a; and Executive Order 11478, as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes; where pertinent, in a legal proceeding to which the USPS is a party or has an interest; to a government agency in order to obtain information relevant to a USPS decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits; to a government agency upon its request when relevant to its decision concerning employment, security clearances, security or suitability investigations, contracts, licenses,

grants or other benefits; to a congressional office at your request, to an expert, consultant or other person under contract with the USPS to fulfill an agency function; to the Federal Records Center for storage; to the Office of Management and Budget for review of private relief legislation; to an independent certified public accountant during an official audit of USPS finances; to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; and to a labor organization as required by the National Labor Relations Act. Under the Privacy Act provision, the information requested is voluntary for the complainant, and for Postal Service employees and other witnesses.

## USPS Standards of Conduct

Postal Service regulations require all postal employees to cooperate in any postal investigation. Failure to supply the requested information could result in disciplinary action (ELM 666).

## Oath / Affirmation

Subscribed and (sworn) (affirmed) before me on this ___XXXX___ day of ___XXXXXXXXXX___ , 20XX .

Signature of EEO Complaints Investigator

Affiant's Signature (Sign in the presence of EEO Investigator)

Signature of Affiant

## Declaration

**I declare, under penalty of perjury, that the foregoing is true and correct.**

*(Affiant, sign and date if attached statement was not completed in the presence of the EEO Investigator.)*

Affiant's Signature
X

Date Signed
X 4/23/04

PS Form 2571, May 2001

Affidavit  C
Page 14 of 14