U. S. Postal Service

# EEO Investigative Affidavit *(Witness)*

| Page No. | No. Pages | Case No. |
|---|---|---|
| 1 | | 4K-220-0002-03 |

| 1. Affiant's Name (First, Middle, Last) | 2. Employing Postal Facility |
|---|---|
| David Lee | Arlington Post Office |

| 3. Position Title | 4. Grade Level | 5. Postal Address and ZIP+4 | 6. Unit Assigned |
|---|---|---|---|
| Supervisor | | 3119 Washington Blvd. Arlington, VA 22210-9998 | |

### Privacy Act Notice

Privacy Act Notice. The collection of this information is authorized by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e-16; the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 633a; the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794a; and Executive Order 11478, as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine Use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes; where pertinent, in a legal proceeding to which the USPS is a party or has an interest; to a government agency in order to obtain information relevant to a USPS decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits; to a government agency upon its request when relevant to its decision concerning employment, security clearances, security or suitability investigations, contracts, licenses, grants or other benefits; to a congressional office at your request; to an expert, consultant, or other person under contract with the USPS to fulfill an agency function; to the Federal Records Center for storage; to the Office of Management and Budget for review of private relief legislation; to an independent certified public accountant during an official audit of USPS finances; to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; and to a labor organization as required by the national Labor Relations Act. Under the Privacy Act provision, the information requested is voluntary for the complainant, and for Postal Service employees and other witnesses.

### USPS Standards of Conduct

Postal Service regulations require all postal employees to cooperate in any postal investigation. Failure to supply the requested information could result in disciplinary action. (ELM 666)

7. Statement (Use Form 2569 if additional space is required)

I understand that the following allegations have been accepted for investigation: Mr. Marco J. Thomas alleges discrimination based on mental disability (stress), age (DOB: 10/14/62), and retaliation (prior EEO activity) when: (1) on September 16, 2002, his request for LWOP in lieu of annual or sick leave for the period of September 5, 2002 until further notice was disapproved by Postmaster Napper; (2) on December 9, 2002, he reported for duty as scheduled, however he was yelled at in front of fellow employees by Supervisor Mark Johnson to get off the floor and return at 10:00 AM; (5) on December 2, 2002, after returning from an appointment at the USPS medical unit, he was advised by supervisor Johnson that his reporting time had been changed from 7:00 AM to 9:00 AM that day thus making the job related appointment off-the-clock when it should have been on-the-clock; and (6) on February 10, 2003, he received a Notice of 14-Days Suspension from Mark Johnson.

Q1. What is your full name (first, middle initial and last)?
A1. David B Lee

Q2. What is your position title, pay grade, work unit and work location address?
A2. Delivery Customer Service Supervisor, EAS-17. North Station Arlington

Affidavit E
Page 1 of 12

Q3. What is your mental disability, if you have one?
A3. None

Q4. What is your age and date of birth?
A4. 34 yr old, 8/15/1969

Q5. Do you have any prior EEO activity (as a witness, complainant, representative, etc.)? If so, when did this prior EEO activity take place?
A5. No

Q6. Were you involved or do you have knowledge of Mr. Thomas's prior EEO activity? If so, how and when were you involved, or when did you become aware of the prior EEO activity?
A6. No Knowledge

Q7. Were you aware that Mr. Thomas suffered from stress? If so, when did you become aware?
A7. No

Q8. What was your work relationship with Mr. Thomas during the time period of the matters at issue (September and December 2002 and February 2003), and what is your current relationship? (Immediate supervisor, second-level supervisor, etc.)
A8. Immediate Supervisor

Affidavit E
Page 2 of 12

Issue #1: On September 16, 2002, his request for LWOP in lieu of annual or sick leave for the period of September 5, 2002 until further notice was disapproved by Postmaster Napper

Q9. What was you involvement or knowledge of Mr. Thomas requesting LWOP in lieu of annual or sick leave on September 16, 2002, for the period September 5, 2002 until further notice, and what reason(s) did Mr. Thomas give for the request?

A9. Can't remember back to the date.

Q10. What was/were the reason(s) for denying Mr. Thomas's request for LWOP, and who denied the request?

A10. Can't Recall

Q11. What other management officials were involved with the decision to deny Mr. Thomas's request for LWOP? If so, identify the management official(s) and their reason(s) for the denial.

A11. Can't Recall

Q12. What is policy regarding the granting of LWOP in lieu of annual or sick leave, and was this followed with regard to Mr. Thomas?

A12. Supervisor can not grant LWOP.

Affidavit E
Page 3 of 12

Q13. Mr. Thomas identified Destra Beyne and Demetrice Mundy as employees who were treated differently than he was. Was Destra Beyne and Demetrice Mundy allowed to take LWOP

in lieu of sick or annual leave? If so, who gave the approval, and when did they take LWOP?

A13. Can't Recall

Q14. If Destra Beyne and Demetrice Mundy were allowed to take LWOP in lieu of sick or annual leave, what were the reasons and how did their circumstances differ from Mr. Thomas's? (Please identify Destra Beyne and Demetrice Mundy by mental disability, if they have one, age and prior EEO activity)

A14. Can't Recall

Q15. Were other similarly situated employees to Mr. Thomas, under the same or similar circumstances, allowed to take LWOP in lieu of sick or annual leave? If so, why were their requests approved and not Mr. Thomas's, and what management official(s) approved LWOP for these employees? (Please identify these employees by name, position title, grade, mental disability, age and prior EEO activity)

A15. Can't Recall

Q16. Was Mr. Thomas's <u>mental disability</u> a factor when his request to use LWOP in lieu of annual or sick leave was denied? If so, explain the reason(s)

A16. No mental disability.

Affidavit E
Page 4 of 12

Q17. Was Mr. Thomas's <u>age</u> a factor when his request to use LWOP in lieu of annual or sick leave was denied? If so, explain the reason(s)

A17. No age facto

Q18. Was Mr. Thomas's <u>prior EEO activity</u> a factor when his request to use LWOP in lieu of annual or sick leave was denied? If so, explain the reason(s)

A18. Can't recall

Q19. Did Mr. Thomas file a grievance on this issue? If so, what was the outcome of the grievance?

A19. Can't recall

**Issue #2: <u>On December 9, 2002, he reported for duty as scheduled, however he was yelled at in front of fellow employees by Supervisor Mark Johnson to get off the floor and return at 10:00 AM</u>**

Q20. On December 9, 2002, did Mr. Johnson yell at Mr. Thomas in front of other employees to get off the floor and return at 10:00 AM? If so, how and when did you learn about it, and why did Mr. Johnson yell at Mr. Thomas to get off the floor and return at 10:00 AM? (Explain the circumstances)

A20. Can't recall

Q21. On December 9, 2002, did Carlton McCoy tell Mr. Thomas to leave the workroom floor, clock out and return at 10:00 AM? If so, how and when did you learn this, and why did Mr. McCoy say this to Mr. Thomas?

A21. Can't recall

Affidavit E
Page 5 of 12

Q22.  Prior to this incident, had Mr. Johnson yelled at an employee in front of other employees to get off the floor and return at a later time? If so, when and why did this take place? (Identify the employee(s) by name, position title, grade, mental disability, age and whether they had prior EEO activity)

Q22.  Can't recall

Q23.  Is it Mr. Johnson's management style to yell at an employee in front of other employees, or tell them to get off the floor and return at a later time?

A23.  No

Q24.  What is policy/agreement regarding a supervisor yelling at an employee in front of other employees, or telling an employee to get off the floor and return at a later time?

A24.  Don't yell in front of employee.

Q25.  Was Mr. Thomas's <u>mental disability</u> a factor when Mr. Johnson yelled at him in front of other employees to get off the floor and return at 10:00 AM on December 9, 2002? If so, explain the reason(s)

A25.  Can't recall

Affidavit  E
Page  6  of  12

Q26. Was Mr. Thomas's <u>age</u> a factor when Mr. Johnson yelled at him in front of other employees to get off the floor and return at 10:00 AM on December 9, 2002? If so, explain the reason(s)

A26. No

Q27. Was Mr. Thomas's <u>prior EEO activity</u> a factor when Mr. Johnson yelled at him in front of other employees to get off the floor and return at 10:00 AM on December 9, 2002? If so, explain the reason(s)

A27. Can't Recall

Q28. Did Mr. Thomas file a grievance on this issue? If so, what was the outcome of the grievance?

A28. Can't Recall

<u>Issue #5:</u> On December 2, 2002, after returning from an appointment at the USPS medical unit, he was advised by supervisor Johnson that his reporting time had been changed from 7:00 AM to 9:00 AM that day thus making the job related appointment off-the-clock when it should have been on-the-clock

Q29. On December 2, 2002, did Mr. Johnson change Mr. Thomas's reporting time from 7:00 AM to 9:00 AM? If so, what was/were the reason(s), and what was your involvement?

A29. Can't Recall

Q30. What other management officials were involved with changing Mr. Thomas's reporting time from 7:00 AM to 9:00 AM, and what were their reasons for doing this?

A30. Can't Recall

Affidavit E
Page 7 of 12

Q31. What is policy regarding changing an employee's reporting time when he/she has a medical appointment, and was this followed with regard to Mr. Thomas?

A31. Avoid chang clock Rings

Q32. Has the reporting time of other similarly situated employees to Mr. Thomas, under the same or similar circumstances, changed? If so, what was the reason, and what management official(s) made the decision? (Please identify these employees by name, position title, grade, mental disability, age and prior EEO activity)

A32. Can't Recall

Q33. Was Mr. Thomas's <u>mental disability</u> a factor when his reporting time was changed? If so, explain the reason(s)

A33. No

Q34. Was Mr. Thomas's <u>age</u> a factor when his reporting time was changed? If so, explain the reason(s)

A34. No

Q35. Was Mr. Thomas's <u>prior EEO activity</u> a factor when his reporting time was changed? If so, explain the reason(s)

A35. No

Affidavit E
Page 8 of 12

Q36. Did Mr. Thomas file a grievance on this issue? If so, what was the outcome of the grievance?

A36. Can't Recall

Issue #6: On February 10, 2003, he received a Notice of 14-Days Suspension from Mark Johnson.

Q37. What were the reasons that on February 10, 2003, Mr. Johnson gave Mr. Thomas a Notice of 14-Day Suspension, and what was your involvement?

A37. Can't Recall

Q38. Were other management official(s) involved with the decision to give Mr. Thomas the Notice of 14-Day Suspension? If so, what management officials were involved and how were they involved?

A38. Can't Recall

Q39. Was Mr. Thomas given any warnings prior to the issuance of the Notice of 14-Day Suspension? If so, what were the warnings, when were they given and what management official(s) gave him the warnings?

A39. Can't Recall

Q40. What is policy/agreement regarding issuing a Notice of 14-Day Suspension to an employee, and was this policy/agreement followed with regard to Mr. Thomas?

A40. go through the step procedures Discussion, letter of warning — 7-Days

Q41. Were other similarly situated employees to Mr. Thomas, under the same or similar circumstances, given a Notice of 14-Day Suspension? If so, what were the reasons and what management official(s) were involved? (Please identify these employees by name, position title, grade, mental disability, age and prior EEO activity)

A41. Don't recall

Q42. Was Mr. Thomas's <u>mental disability</u> a factor when he was given a Notice of 14-Day Suspension? If so, explain the reason(s)

A42. No

Q43. Was Mr. Thomas's <u>age</u> a factor when he was given a Notice of 14-Day Suspension? If so, explain the reason(s)

A43. No

Q44. Was Mr. Thomas's <u>prior EEO activity</u> a factor when he was given a Notice of 14-Day Suspension? If so, explain the reason(s)

A44. No

Affidavit 6
Page 10 of 12

Q45. Did Mr. Thomas file a grievance on this issue? If so, what was the outcome of the grievance?
A45.

*Can't Remember*

Q46. Is there anyone you would care to name who has knowledge of the matters at issue? (If so, please provide the person's name, position title, job location, telephone number and the <u>specific</u> knowledge the person has)
A46.

*Can't Recall.*

Q47. Is there anything related to the accepted issues you want to add to your statement?
A47.

*No*

------------------------------ END OF QUESTIONS ------------------------------

Provide a copy of any documentation you believe supports your statements.

I declare under penalty of perjury that the foregoing is true and correct.

Affiant's Signature: X [signature]

Date Signed: X 4/22/04

PS Form 2568-B, March 2001

Affidavit E
Page 11 of 12

| U.S. Postal Service | No. |
|---|---|
| **Certification** | 4K-220-0002-03 |

I have read the proceeding attached statement, consisting of __12__ pages, and it is true and complete to the best of my knowledge and belief. In making this statement, I understand Section 1001, Title 18 of the U.S. Code which states:

"Whoever, in any manner within the jurisdiction of any department or agency of the United States knowingly and wilfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representation, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than 5 years, or both."

**Privacy Act Notice**

**Privacy Act Notice.** The collection of this information is authorized by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e-16; the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 633a; the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794a; and Executive Order 11478, as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes; where pertinent, in a legal proceeding to which the USPS is a party or has an interest; to a government agency in order to obtain information relevant to a USPS decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits; to a government agency upon its request when relevant to its decision concerning employment, security clearances, security or suitability investigations, contracts, licenses, grants or other benefits; to a congressional office at your request, to an expert, consultant or other person under contract with the USPS to fulfill an agency function; to the Federal Records Center for storage; to the Office of Management and Budget for review of private relief legislation; to an independent certified public accountant during an official audit of USPS finances; to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; and to a labor organization as required by the National Labor Relations Act. Under the Privacy Act provision, the information requested is voluntary for the complainant, and for Postal Service employees and other witnesses.

**USPS Standards of Conduct**

Postal Service regulations require all postal employees to cooperate in any postal investigation. Failure to supply the requested information could result in disciplinary action (ELM 666).

**Oath / Affirmation**

Subscribed and (sworn) (affirmed) before me on this __XXXX__ day of __XXXXXXXXXX__, 20XX __.

| Signature of EEO Complaints Investigator | Affiant's Signature (Sign in the presence of EEO Investigator) |
|---|---|
| | Signature of Affiant |

**Declaration**

**I declare, under penalty of perjury, that the foregoing is true and correct.**

(Affiant, sign and date if attached statement was not completed in the presence of the EEO Investigator.)

| Affiant's Signature | Date Signed |
|---|---|
| X [signed] | X 4/23/2004 |

PS Form **2571**, May 2001

Affidavit __E__
Page __12__ of __12__